[Nos. F063318, F063922. Fifth Dist. Jan. 31, 2013.]

BRENT HUTTON, Plaintiff and Appellant, v.
FIDELITY NATIONAL TITLE COMPANY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

**COUNSEL**

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler, Jason P. Fowler, Kitty Szeto, Douglas Han, John M. Bickford; Dake, Braun & Monje, Stephen M. Dake and Craig N. Braun for Plaintiff and Appellant.

Hahn Loeser & Parks and Michael J. Gleason for Defendant and Respondent.

## OPINION

**KANE, J.**—Plaintiff Brent Hutton sued defendant Fidelity National Title Company, the escrow company used in plaintiff's refinance of his home loan, for allegedly charging a notary fee in excess of the amount permitted by Government Code section 8211.[1] Under that statute, a notary may charge only $10 per signature for "taking an acknowledgment." (*Id.*, subd. (a).)[2] Since only two acknowledgments were taken by the notary in connection with plaintiff's loan refinance (with only one signature notarized as to each acknowledgement), plaintiff asserted that defendant violated the statute by charging him $75 for services performed by the notary.[3] Based on the supposed overcharge for notary services, plaintiff's complaint set forth causes of action for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL) and unjust enrichment. The complaint was styled as a statewide, multiyear class action on behalf of plaintiff and all others who used defendant's escrow services in real estate or loan refinance transactions and were allegedly overcharged for notary services.

After conducting discovery but before class certification, defendant moved for summary judgment on two principal grounds: (1) The $75 fee was not a violation of section 8211 because that section only limited fees for certain services (e.g., taking acknowledgments) and the notary involved in this case performed many *other* services (i.e., traveling to location of signing, presenting multiple documents for signature, showing where to sign or initial each document, answering questions, etc.) and (2) the $75 fee was charged and retained by a third party independent contractor, not by defendant, even though defendant as escrow holder disbursed the funds for such services. The trial court granted defendant's motion for summary judgment on both grounds. Plaintiff appeals from the resulting judgment. We find the first ground noted above to be dispositive and conclude on that basis that the trial

---

[1] Unless otherwise indicated, all further statutory references are to the Government Code.

[2] For convenience, we refer to a "notary public" as simply a notary. The relevant portion of section 8211 states: "Fees charged by a notary public for the following services shall not exceed the fees prescribed by this section. [¶] (a) For taking an acknowledgment or proof of a deed, or other instrument, to include the seal and the writing of the certificate, the sum of ten dollars ($10) for each signature taken."

[3] The complaint alleged the fee was $125, but that was merely an estimated amount in a preclosing statement. It was undisputed that the actual amount charged was $75. It was also undisputed that two acknowledgements were taken by the notary, one for a deed of trust and another for an interspousal transfer deed, each document having a single notarized signature.

court properly granted summary judgment.[4] Plaintiff also appeals from the trial court's postjudgment order granting an award of attorney fees to defendant pursuant to a contractual provision in the escrow instructions. Plaintiff contends that said provision should not have been enforced because it was unconscionable. We agree with plaintiff on that issue and reverse the trial court's order granting attorney fees. In all other respects, the judgment below is affirmed.

## FACTS AND PROCEDURAL HISTORY

*Plaintiff's Complaint*

On February 26, 2010, plaintiff filed his complaint against defendant to obtain remedies for alleged violation of the UCL and unjust enrichment. According to the complaint, section 8211 made it unlawful for defendant to charge in excess of $10 for each notarized signature on a deed or deed of trust. In providing escrow services in connection with plaintiff's loan refinance, defendant allegedly billed a predetermined notary charge that exceeded the amount prescribed in section 8211. That same practice by defendant allegedly resulted in other persons (class members) being overcharged by defendant for notary services in connection with other real estate or loan refinance transactions. The complaint explained further: "The law could not be simpler. California Government Code Section 8211 sets a cap on notarization fees. Under Section 8211[, subdivision ](a), it is illegal to charge more than $10 per notarized signature on each deed or deed of trust used in a specific Real Estate Transaction. [¶] . . . [Defendant] charged . . . more than $10 per signature. Thus, [defendant] violated the law." Based on these core facts, plaintiff alleged a first cause of action labeled as unfair business practices (elsewhere more specifically identified by plaintiff as a UCL cause of action) and a second cause of action for unjust enrichment. Both causes of action were explicitly premised upon defendant's alleged overcharge for notary fees in violation of section 8211.

*Defendant's Motion for Summary Judgment*

On December 23, 2010, defendant filed its motion for summary judgment. We have already summarized above the grounds upon which that motion was made. In support of the first ground for the motion (i.e., that § 8211 was not violated), defendant presented, among other evidence, the declaration of the individual notary who was involved in the document signing in this case— namely, Lauri E. Kilpatrick (Kilpatrick). In her declaration, Kilpatrick described a variety of services that she typically provided in connection with

---

[4] Since the first ground is dispositive, we find it unnecessary to address the second ground (i.e., the notary's independent contractor status).

the signing of loan refinance documents in her capacity as a notary and a "certified signing agent" (or CSA). As a CSA, she is familiar with the various documents necessary in the loan closing process and is able to answer questions. Her declaration stated: "Generally, during a loan closing, I will (a) present all of the loan documents to the borrower which generally consists of about 60 to 150 pages, (b) make all necessary disclosures required by those loan documents, (c) explain the purpose of each loan document, (d) answer any questions the borrower may have about the loan documents or the loan closing process in general, (e) indicate where the borrower must sign each loan document, and (f) take an acknowledgment of the borrower's signature when necessary. *I provided these services for Mr. Hutton's 2007 refinance closing.* [¶] . . . The majority of my loan signings are mobile loan signings where I will travel to the borrower's home, the lender's office, or the escrow holder's office." (Italics added.) Of the services mentioned by Kilpatrick, the taking of acknowledgments (or the notarizing of signatures) was merely one minor part. Defendant's motion noted plaintiff's testimony in which he (plaintiff) recalled that "a lady" (Kilpatrick) came to his home to conduct the signing of plaintiff's 2007 loan refinance papers, but he recalled little else about it.[5] Defendant's motion also pointed out that the $75 charge, as it appeared in the closing statement (the HUD-1 form), included an explicit reference to the fact that Kilpatrick was also a CSA. Specifically, the HUD-1 form stated: "Notary to Lauri Kilpatrick, APN & CSA."

In support of the second ground for the motion, defendant presented evidence that Kilpatrick was an independent contractor who charged and retained the entire fee, and that she was not an agent or employee of defendant.[6] Preliminarily, defendant asserted that as an escrow company, it frequently made use of third party mobile notaries (like Kilpatrick) for loan closings. Defendant did so for several reasons, including that it freed up their escrow officers for other critical tasks since loan signings may take one to two hours, and because loan signings often involved travel to the borrower's residence and often occurred outside of normal business hours to accommodate a borrower's schedule. Defendant disbursed a check to Kilpatrick for $75 after she submitted an invoice for a "loan signing." Defendant's evidence showed that Kilpatrick was an independent contractor doing business since 2005 as "A Good Deed Document & Notary Service." Kilpatrick was on defendant's approved list of third party notaries for closing loans, based in part on her completion of a "Notary Approval Request" packet that included an "Independent Contractor Status Test." Defendant further asserted that

---

[5] Plaintiff testified the signing occurred at his house, while Kilpatrick recalled that it took place at the escrow company. Either way, she was traveling from her own business office to a suitable place to conduct the signing.

[6] Defendant's motion was also made on a third ground to the effect that the dispute should have been referred to the Secretary of State. That contention is not before us in this appeal.

Kilpatrick had her own business office, had other clients besides defendant, made her services available to other escrow companies, set her own hours and did not take instructions from defendant on how to perform her essential work. At a typical loan signing, Kilpatrick's practice was to disclose to the borrower that she was an independent contractor and was not an employee of the lender or the escrow holder.

Plaintiff filed opposition to the motion for summary judgment, arguing that the fees charged were unlawful under section 8211 even if other services were provided because, allegedly, the only essential *notary* function performed was the taking of two acknowledgments and the HUD-1 described the fee as "Notary to Lauri Kilpatrick, APN & CSA." Plaintiff's opposition further argued that even if the fees were not unlawful, they were potentially *unfair* or *fraudulent* under the UCL because (1) defendant did not itemize or disclose the various services being provided and (2) Kilpatrick's answering of questions would constitute the unauthorized practice of law. According to plaintiff, since defendant's motion did not negate these other potential theories, defendant did not meet its initial burden as the moving party. Additionally, plaintiff's opposition argued that there were triable issues of fact whether Kilpatrick was defendant's agent, based in part on defendant's guidelines regarding its approved notaries, which guidelines may, according to plaintiff, indicate a degree of control over the manner of performing services. For these and other reasons, plaintiff argued that the motion for summary judgment should be denied.

Defendant's reply in support of its motion responded that *all* of plaintiff's claims were premised on violation of section 8211 and that no other theories were alleged in the complaint. Since in summary judgment proceedings the material issues are framed and limited by the pleadings, defendant's reply insisted it was not necessary for defendant to negate theories that were not pled. Additionally, defendant argued that the material facts showing Kilpatrick to be an independent contractor were not in dispute and, therefore, that issue could properly be decided as a matter of law.

The hearing of the motion for summary judgment was held on March 14, 2011. Following oral argument, the trial court took the matter under submission. On May 13, 2011, the trial court issued its written order granting the motion for summary judgment. The court granted the motion because "no overcharge occurred as . . . [section] 8211 only sets a price for taking an acknowledgment," and it "does not limit what notaries can charge for services which are not listed in that statute." Secondly, the trial court concluded that Kilpatrick was a third party independent contractor and, therefore, defendant was not liable even if there was an overcharge. On June 17, 2011, the trial court entered judgment in favor of defendant. Plaintiff timely appealed from that judgment.

*Defendant's Motion for Attorney Fees*

The judgment entered below made defendant the prevailing party in the action. On August 8, 2011, defendant moved for an award of attorney fees based on a provision in the escrow instructions. Defendant's motion requested $266,801 in attorney fees. Defendant argued that this sum, though large, was reasonable in light of the fact that plaintiff had aggressively litigated and engaged in extensive and wide-ranging discovery, which treated the case as a multiyear, statewide class action, even though there had been no class certification. Defendant substantiated the actual amount of time spent in defending the litigation by submitting declarations and copies of billing statements or invoices.

Plaintiff objected to the enforcement of the attorney fees provision, contending it was so oppressive and one-sided that it was unconscionable. Plaintiff also objected that the amount of attorney fees requested was unreasonable. The motion was heard on September 1, 2011, and following oral argument the trial court took the matter under submission. On October 21, 2011, the trial court granted the motion and awarded defendant attorney fees in the sum of $266,801. Plaintiff then separately appealed from the order granting attorney fees, and the two appeals were consolidated by this court.

## DISCUSSION

### I. *Summary Judgment Law and Standard of Review*

We begin with the summary judgment motion. Summary judgment is appropriate when all of the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

A defendant may move for summary judgment if it is contended that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) A defendant moving for summary judgment has the initial burden of showing a cause of action is without merit. A defendant meets that burden by showing that one or more elements of the cause of action cannot be established, or that there is a complete defense thereto. (*Id.*, subd. (p)(2).) If the defendant makes such a showing, the burden shifts to the plaintiff to produce evidence demonstrating the existence of a triable issue of material fact. (*Ibid.*; *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 849.)

The pleadings play a key role in a summary judgment motion. " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . .' " and to frame "the outer measure of materiality in a summary judgment proceeding." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) As our Supreme Court has explained it: "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [91 Cal.Rptr.3d 532, 203 P.3d 1127] (*Conroy*).) Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings. (*Id.* at pp. 1254–1255; *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 332 [40 Cal.Rptr.3d 313]; *Lockhart v. County of Los Angeles* (2007) 155 Cal.App.4th 289, 304 [66 Cal.Rptr.3d 62]; see *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 182 [59 Cal.Rptr.3d 672] ["We do not require [defendant] to negate elements of causes of action plaintiffs never pleaded."].)

Furthermore, " ' " '[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.' " ' [Citation.]" (*County of Santa Clara v. Atlantic Richfield Co., supra*, 137 Cal.App.4th at p. 333.) An opposing party's separate statement is not a substitute for amendment of the complaint. (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1201–1202, fn. 5 [37 Cal.Rptr.3d 863].) Similarly, " ' "[d]eclarations in opposition to a motion for summary judgment 'are no substitute for amended pleadings.' . . . If the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, . . . the plaintiff forfeits an opportunity to amend to state new claims by failing to request it." ' [Citations.]" (*Conroy, supra*, 45 Cal.4th at p. 1254.)

On appeal from a summary judgment, our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431].) "We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards." (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373 [105 Cal.Rptr.2d 699].) We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in

the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503 [10 Cal.Rptr.3d 568]; *Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].) In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 [74 Cal.Rptr.3d 108, 179 P.3d 905]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

## II. *Summary Judgment Was Properly Granted*

### A. *Defendant's Burden as Moving Party Was Satisfied*

In this case, the trial court acknowledged that plaintiff's narrowly framed causes of action limited the issues that had to be addressed by defendant's summary judgment motion. According to the trial court, the *only* theory of liability alleged in the complaint was that defendant overcharged plaintiff for notary services and retained the benefits thereof. That is, plaintiff's entire complaint was premised on the assumption that section 8211, subdivision (a), was violated in this case when plaintiff was charged $75 for Kilpatrick's services. When defendant's motion presented evidence showing that Kilpatrick provided many other services at the loan signing besides merely taking two acknowledgments, the trial court concluded that plaintiff's causes of action were without merit based on that showing *and* the clear language of the statute. According to the trial court, section 8211 does not limit what may be charged "for services which are not listed in that statute." We agree with that analysis.

In the discussion that follows, we shall break down defendant's (and the trial court's) reasoning into three logical steps: (1) the meaning of section 8211, (2) the limited scope of plaintiff's pleading, and (3) defendant's evidentiary showing as the moving party successfully defeating the causes of action as pled. When each step is considered, it will serve to highlight that defendant met its initial burden as the moving party. Afterwards, we will address the matters presented in plaintiff's opposition.

#### 1. *Section 8211*

Section 8211 states, in relevant part, that "[f]ees charged by a notary public *for the following services* shall not exceed the fees prescribed by this section." (Italics added.) Included in the list of services regulated by section

8211 is the fee "[f]or taking an acknowledgment." (*Id.*, subd. (a).)[7] It is plain on the face of the statute that it sets fees only for certain types of services performed by a notary—namely those services listed in the statute. Conversely, the statute does not regulate fees for any services not mentioned in the statute.[8] ■ " 'It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citations.]' " (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996].) We conclude the trial court correctly recognized the clear meaning of this statute.

### 2. The Pleadings

Throughout plaintiff's complaint, the sole basis for liability was the claim that defendant violated section 8211 and thus overcharged plaintiff. For example, in the introductory general allegations, plaintiff's complaint alleged that section 8211 "adopts a specific regulatory scheme which establishes specific limits on the amount of fees that can be charged for notarizing documents." Allegedly, plaintiff was charged a predetermined notary fee that was contrary to section 8211. As to plaintiff's loan transaction, defendant allegedly charged a predetermined fee of $125 "even though only [two] signature[s were] notarized in Plaintiff's Real Estate Transaction."[9] According to the complaint, defendant "violated California law by overcharging Plaintiff more than $100 for notarizing the deed of trust which Plaintiff signed," and defendant thereby "engaged in unlawful business practices and unjustly enriched [itself] by overcharging" plaintiff. Based on these allegations of fact, the complaint goes on to specify the common question of law involved in the case: "The law could not be simpler. California Government Code Section 8211 sets a cap on notarization fees. Under Section 8211[, subdivision ](a), it is illegal to charge more than $10 per notarized signature on each deed or deed of trust used in a specific Real Estate Transaction. [¶] . . . [Defendant] charged . . . more than $10 per signature. Thus, [defendant] violated the law."

Further, as to the first cause of action (the UCL claim labeled as "Unfair Business Practices"), the complaint alleged that the basis for that claim was

---

[7] Section 8211, subdivision (a), states: "For taking an acknowledgment or proof of a deed, or other instrument, to include the seal and the writing of the certificate, the sum of ten dollars ($10) for each signature taken."

[8] As noted by defendant, current materials produced by the California Secretary of State's office, entitled "Notary Public Disciplinary Guidelines," indicated in a hypothetical example relating to application of section 8211 that a notary may charge for travel expenses, as long as he or she actually did travel. (Cal. Sect. of State, Notary Public Disciplinary Guidelines (Nov. 2012) p. 19.) Travel is not among the charges expressly listed in section 8211.

[9] Actually, the amount charged to plaintiff was $75; the $125 amount was set forth in a preliminary estimated statement of closing fees. This correction was brought to light in the summary judgment motion, and was not disputed.

as follows: "[Defendant] engaged in unlawful, unfair or fraudulent business acts and practices. *Namely, [defendant] overcharged [p]laintiff . . .* by assessing and collecting set Notary Fees in each Real Estate Transaction irrespective of the number of signatures actually notarized. Plaintiff . . . [was] *charged more than California law allowed,* and thus lost money due to [defendant's] *unlawful* business practices." (Italics added.) As to the second cause of action (for "Unjust Enrichment"), the complaint alleged that the basis for that claim was as follows: "California Government Code Section 8211[, subdivision ](a) sets a cap on notarization fees. *Under Section 8211[, subdivision] (a), it is illegal to charge more than $10 per notarized signature.* [Defendant], *through violating California law,* unjustly enriched [itself] at the expense of Plaintiff . . . ." (Italics added.)

We conclude from these allegations that plaintiff's entire complaint was founded on one, and only one, theory of liability: that defendant overcharged plaintiff for notary services under the provisions of section 8211, subdivision (a). As the trial court correctly held, "[b]ased on the causes of action *alleged,* [p]laintiffs *only* make a claim that [defendant] overcharged them for the notary fees." (Italics added.) Since that was the exclusive theory of liability pled by plaintiff, it was all that had to be addressed by defendant's motion for summary judgment. (*County of Santa Clara v. Atlantic Richfield Co., supra,* 137 Cal.App.4th at pp. 332–333 [theories not pled by plaintiff need not be addressed in defendant's motion under Code Civ. Proc., § 437c].)

### 3. *Defendant's Factual Showing*

As noted above, in meeting the issue of the alleged overcharge under section 8211, defendant's motion demonstrated that Kilpatrick, who was both a notary and a CSA, provided a number of signing services in connection with plaintiff's loan refinance in addition to merely taking the two acknowledgements. Among other things, it was shown that Kilpatrick presented the various loan documents for signature, read the mandatory disclosures, explained the purpose of loan documents, indicated where the borrower must sign on each document, and answered questions. In short, she traveled to the place of the signing (which plaintiff recalled was his home) and facilitated the closing of the loan by obtaining the necessary signatures on all of the documents in a careful, step-by-step process, including answering questions. While the assistance and service provided by Kilpatrick included the taking of two acknowledgments (each with one notarized signature), her performance of that intrinsically notarial act was merely one part of the overall signing services she provided.

More than that, Kilpatrick's deposition testimony and her official notary journal evidenced that when she took the two acknowledgements in connection with plaintiff's loan refinance signing, she recorded in her notary journal

the fee of $10 per notarized signature. Further, Kilpatrick's testimony made clear that she understood $10 per notarized signature was all she could charge for that particular function, notwithstanding the fact that the total fee she billed for the entirety of her signing services was a flat fee of $75, which was not broken down or itemized.[10] A reasonable inference may be drawn from this evidence that plaintiff was charged only $10 per signature for the two acknowledgments, as set forth in Kilpatrick's notary journal, and that the total signing fee of $75 was attributable to the fact that many other services were performed by Kilpatrick.[11]

In conclusion, because section 8211 only limited fees for the services specifically listed therein and did not prohibit remuneration for other services rendered, defendant's evidentiary showing was sufficient to prima facie negate plaintiff's claim that defendant allegedly violated the statute by charging $75. Plaintiff's complaint assumed that the $75 charged was for taking two acknowledgments, but defendant showed that it was instead for a variety of loan signing services provided by Kilpatrick. We conclude that defendant met its burden as the moving party.

### B. *Plaintiff's Opposition*

Plaintiff argued in his opposition to the motion, as he does on appeal, that even if defendant negated plaintiff's claim for violation of section 8211, defendant nevertheless failed to meet its burden as the moving party since there were other potential theories of liability available to plaintiff that defendant's motion did not address. Plaintiff also asserted that evidence referenced in his opposition was sufficient to create a triable issue of material fact. We now address these arguments.[12]

#### 1. *Other Theories Were Not Pled*

In arguing that defendant did not address certain *other* potential causes of action, plaintiff's appeal emphasizes that the UCL has three

---

[10] We may consider this evidence in deciding whether defendant's burden was met, even though it was submitted in plaintiff's opposition. (See *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 749–751 [41 Cal.Rptr.2d 719] [in determining whether the defendant's burden of production was met, the court may consider evidence supplied by the plaintiff's opposition that filled a gap in the defendant's showing]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1267 [78 Cal.Rptr.3d 372] [same]; Code Civ. Proc., § 437c, subd. (c) ["all" the papers considered].)

[11] In defendant's reply, defendant noted Kilpatrick's deposition testimony that during the signing of the loan documents, plaintiff's wife (who was also a notary) asked about the fee being more than $10, and Kilpatrick explained that it was not a mere notarization but a loan signing, which was different.

[12] Plaintiff also argued that section 8211 had an itemization requirement, but the language of that section plainly does not say anything about itemization, and we decline to insert a duty that is not in the statute.

separate grounds of liability. That is a correct statement of the law. (See Bus. & Prof. Code, § 17200.) "Since section 17200 is in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair,' or 'unlawful,' or 'fraudulent.' [Citation.]" (*Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1496 [6 Cal.Rptr.3d 148].) Plaintiff argues that it stated a cause of action for potential *unfair* or *fraudulent* practices because (1) the HUD-1 form or other documents provided by defendant did not itemize and disclose the specific services that were billed for notary or CSA services performed by Kilpatrick and (2) Kilpatrick's conduct of answering questions about loan documents constituted the unlawful practice of law. Whatever we may think about the viability of such theories, the problem for plaintiff at this stage is that no such claim or cause of action was ever alleged.

In an effort to persuade us that these theories were somehow pled, plaintiff notes that the first cause of action included a statement that defendant's conduct was "unlawful, unfair or fraudulent." But that was a bare conclusion, not the factual basis of a cause of action. Moreover, we cannot ignore that the next sentence of the complaint made it unmistakably clear that the first cause of action was based solely on "unlawful" conduct. It stated, as we previously noted above, as follows: "*Namely*, [defendant] *overcharged* [p]laintiff . . . by assessing and collecting set Notary Fees in each Real Estate Transaction irrespective of the number of signatures actually notarized. Plaintiff . . . [was] *charged more than California law allowed*, and thus lost money due to [defendant's] *unlawful* business practices." (Italics added.) Likewise, the second cause of action for unjust enrichment was premised exclusively on the identical unlawful conduct—that is, on the claim that defendant charged more than what section 8211 permitted, and "through violating [that] California law, unjustly enriched [itself] . . . ." Plainly then, the actionable wrongdoing for which relief was sought in the complaint was not a failure to disclose or itemize, nor a notary's unauthorized practice of law, but that of overcharging plaintiff by exceeding the amount permitted under section 8211.

Finally, plaintiff tries to make something of the fact that the concept of itemization was briefly mentioned in the complaint. That is, the complaint alleged that defendant did not compute notary fees based on an itemization of the total number of notarized signatures taken in a transaction, but instead defendant billed a predetermined "block" amount. But that allegation was simply a description of the process by which defendant allegedly *overcharged* plaintiff under section 8211, with the overcharge itself being the sole basis of the cause of action in the pleading. In conclusion, nothing in the allegations of the complaint indicated that insufficient disclosure or itemization, or unauthorized practice of law by a notary, constituted the actionable wrongdoing on defendant's part for which relief was sought. No such causes of action were alleged.

What we said at the outset of our discussion bears repeating here: For purposes of a summary judgment motion, the pleadings set the boundaries of the issues to be resolved. (*Conroy, supra,* 45 Cal.4th at p. 1250.) Defendant, therefore, met its burden as the moving party when it negated the sole basis of plaintiff's claims—namely, the alleged excessive notary fee under section 8211. It was not incumbent on defendant to refute liability on some theoretical possibilities not included in the pleadings. (*Conroy, supra,* at p. 1254; *County of Santa Clara v. Atlantic Richfield Co., supra,* 137 Cal.App.4th at p. 332.) Each of the suggested *other* grounds for liability argued by plaintiff were simply theoretical possibilities that were not included in the pleadings. Finally, plaintiff cannot use his opposition papers as a substitute for an amended pleading, and his failure to seek an amendment below forfeits the issue. (*Conroy, supra,* at p. 1254; *County of Santa Clara v. Atlantic Richfield Co., supra,* at p. 333; *Lackner v. North, supra,* 135 Cal.App.4th at pp. 1201–1202, fn. 5.)

## 2. *No Triable Issue of Fact*

█ Nothing in plaintiff's opposition papers created a triable issue of fact on the present ground for the motion. Indeed, most of the opposition evidence went to the separate issue of whether or not Kilpatrick was an agent of defendant, or to show purported theories of liability that were not alleged in the pleadings. Since defendant met its burden as the moving party, and plaintiff failed to demonstrate the existence of a triable issue of fact, we conclude that summary judgment was properly granted. (Code Civ. Proc., § 437c, subds. (c) & (p)(2).)[13]

## III. *Attorney Fees Provision Was Unconscionable**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[13] Plaintiff's appeal also claims the trial court erred when it did not sustain his evidentiary objections to certain statements in two of the declarations submitted by defendant. Plaintiff has failed to adequately demonstrate error, since a party's understanding of the nature of his or her employment relationship would not be irrelevant to that issue (*Lara v. Workers' Comp. Appeals Bd.* (2010) 182 Cal.App.4th 393, 399 [105 Cal.Rptr.3d 769]), and other facts and circumstances were provided to support that understanding. Therefore, no bare conclusions as to Kilpatrick's independent contractor status were made. In any event, the particular statements to which plaintiff objected did not impact the ground upon which we have affirmed the summary judgment.

*See footnote, *ante,* page 486.

## DISPOSITION

The trial court's order granting defendant's motion for contracted attorney fees and expenses is reversed.[19] In all other respects, the judgment is affirmed. Each party shall bear their own costs.

Gomes, Acting P. J., and Franson, J., concurred.

A petition for a rehearing was denied February 22, 2013, and the opinion was modified to read as printed above.

---

[19] This disposition is not intended to deny defendant recovery of statutory costs awarded by the trial court which were not based on contract.