Filed 3/7/23  Triurol v. Kamen CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TRIUROL, INC. et al.,<br><br>    Cross-complainants and Appellants,<br><br>    v.<br><br>CHARLES KAMEN,<br><br>    Cross-defendant and Respondent. | B314225<br><br>(Los Angeles County Super. Ct. No. SC123657) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Mark H. Epstein, Judge.  Affirmed.

Parcells Law Firm and Dayton B. Parcells III for Cross-complainants and Appellants.

Kilpatrick Townsend & Stockton and Emil W. Herich for Cross-defendant and Respondent.

_____

Cross-complainants Triurol, Inc. (Triurol), Floyd A. Katske (Katske), and Jacob Rajfer (Rajfer) appeal from a judgment entered in favor of cross-defendant Charles Mcfall Kamen (Kamen) following his successful motion for summary judgment. (Code Civ. Proc., § 473c.)  They argue that the trial court erred in dismissing their fraud claims against Kamen because they presented evidence of justifiable reliance upon Kamen's alleged misrepresentations.[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The parties and relevant contracts*

According to the second amended cross-complaint (SACC), Triurol is a corporation that developed "Quercetin based food supplements," including Prosta-Q and Cysta-Q.  Triurol's principals include Katske and Rajfer.

Farr Laboratories, LLC (Farr) is a corporation with "valuable expertise and experience in the manufacturing, marketing, labeling and sales of nutritional food supplements." Its principals include Fred Reinstein (Reinstein) and Alcides (Al) Rodriguez (Rodriguez).

According to the SACC, Kamen is an attorney and was, at one time, president of Farr.

On June 5, 1999, Triurol and Farr entered into an agreement pursuant to which Triurol granted to Farr an exclusive license to "manufacture, package, label, market and

---

[1]    Cross-complainants only challenge the trial court's order on these two causes of action.  They do not raise any argument regarding the three contract-based claims that were also adjudicated in Kamen's favor.

sell" Protas-Q, a Quercetin-based food supplement. The agreement was amended on September 17, 1999, January 14, 2000, and either on March 30 or April 7, 2009.

On June 30, 2000, Triurol and Farr entered into another agreement pursuant to which Triurol granted to Farr an exclusive license to "manufacture, package, label, market and sell" Cysta-Q, another Quercetin-based food supplement. That agreement was amended on April 7, 2009.

In exchange, Farr agreed to provide Triurol with quarterly royalties. Farr also agreed not to develop, market, or sell any other Quercetin-based products.

*The pleadings*

On January 21, 2015, Triurol brought this action against Farr for breach of the two amended licensing agreements. Farr responded by filing a cross-complaint against Triurol, Katske, and Rajfer, alleging breach of the licensing agreements by Triurol and fraud in the inducement by Katske and Rajfer. Triurol, Katske, and Rajfer then filed a cross-complaint against Farr, Reinstein, Rodriguez, and Kamen.

The operative pleading is the SACC, which alleges claims for breach of contract, fraud, and declaratory relief. As is relevant to the issues in this appeal, the SACC alleges that in order to induce Triurol to give Farr the exclusive license to its Quercetin products, cross-defendants made certain representations. "In reasonable reliance on Cross-Defendants['] representations, Cross-Complainant entered into the amended license agreements and agreed to continue to grant to . . . Farr . . . an exclusive worldwide license to manufacture, package, label, market and sell" Triurol's Quercetin-based food supplements.

Triurol later learned that Kamen, along with Farr, Reinstein, and Rodriguez, made a host of misrepresentations in the quarterly accounting reports that were provided to Triurol. Triurol further alleged that an August 28, 2012, e-mail from Kamen to Farr's trademark attorney was proof that Farr had been developing competing Quercetin products in violation of its agreements with Triurol.

*Kamen's motion for summary judgment*

Kamen filed a motion for summary judgment. Regarding the fraud causes of action (second and fourth), Kamen noted that the SACC does not allege that he made any precontractual representations. Rather, cross-complainants' fraud claims against him stem from alleged misrepresentations in quarterly royalty reports that Kamen allegedly distributed and in the August 28, 2012, e-mail sent by Kamen to Farr's trademark attorney. And, there was no evidence that cross-complainants justifiably relied upon either the quarterly royalty reports or the 2012 e-mail.

*Cross-complainants' opposition*

Cross-complainants opposed Kamen's motion. They argued that there was a triable issue of fact concerning whether they relied upon Kamen's misrepresentations set forth in (1) quarterly royalty reports, (2) the 2012 e-mail from Kamen to Farr's trademark counsel, and (3) a January 2009 e-mail from Kamen to cross-complainants that (a) addressed a scheduling issue, and (b) asked for an address to send them a "check and inventorship correction documents." Specifically, cross-complainants asserted that "in reasonable reliance on Kamen's representations, [they] continued to grant to [Farr] the exclusive worldwide license to manufacture, package, label, market and sell the licensed

4

products to their detriment, and if they had known Kamen's representations were false and what he was concealing and the resulting damages they were suffering, they would not have done those things."

In support, cross-complainants offered a declaration from Katske, who attested, in general terms, that he and Triurol relied upon Kamen's representations and continued to grant to Farr the exclusive license to its products.

*Trial court order*

On May 18, 2021, the trial court issued a 10-page written order granting Kamen's motion for summary judgment. Regarding the fraud claims, the trial court found that "cross-complainants [could not] demonstrate they detrimentally relied on any alleged fraud by Kamen." After all, at the heart of cross-complainants' claims was the theory that cross-complainants only entered into their contracts with Farr based upon representations made before those agreements were executed. Since Kamen's alleged fraud postdated the formation of the contracts, cross-complainants could not demonstrate that they justifiably relied upon any alleged misrepresentation made by Kamen.

In so ruling, the trial court rejected cross-complainants' contention that they justifiably relied upon Kamen's alleged fraud by "'continu[ing]' to give Farr a license after already having entered into agreements for the same." "At first glance, this seems like enough to defeat the motion as to these causes of action. But . . . except for one e-mail in January 2009 *all* of [Kamen's] supposed misrepresentations made to cross-complainants are alleged to have occurred *after* the agreements and their last amendments were executed. . . . Cross-

complainants could not have 'continued' to allow Farr to use the license if they had already signed the most recent agreement allowing the licensing to continue.  If the licensing agreement [had] been signed after the misrepresentations, the outcome might be different.  But that is not what the evidence shows.  And the single January 2009 e-mail is of no help.  All Kamen does in that communication is to make some statements about calendar availability and then ask Katske and other Triurol members where royalty checks should be sent.  [Citation.]  There is no indication how this statement caused cross-complainants to change their position on the licensing agreement (let alone the bigger issue of whether this is a fraudulent misrepresentation).

"At best, the Court could read cross-complainants' argument as stating they could have sued cross-defendants sooner but did not.  Even that is a stretch, though, and there is no evidence to support this theory.  Katske does not attest cross-complainants would have initiated this action sooner had they known about the misrepresentations.  [Citation.]  Further, 'not suing' is not the injury-producing conduct allegedly caused by cross-complainants' reliance.  [Citation.]  Cross-complainants do not claim any damage from not suing earlier."

"Additionally, this is not the alleged basis for reliance in the [SACC].  [Citation.]  Consequently, cross-complainants have not demonstrated any triable issue of material fact as to detrimental reliance on any statement by Kamen."

*Judgment and appeal*

Judgment was entered, and this timely appeal ensued.

6

# DISCUSSION

## I. *Standard of review*

"Summary judgment is subject to de novo review. To analyze the issues, 'we follow the traditional three-step analysis. "We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" [Citation.]' [Citation.]" (*Kaney v. Custance* (2022) 74 Cal.App.5th 201, 213.)

"In 'reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. [Citation.]' [Citation.] '[W]e must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment. [Citation.]' [Citation.]" (*Kaney v. Custance, supra,* 74 Cal.App.5th at p. 213.)

II. *The trial court properly dismissed cross-complainants' fraud claims against Kamen*

A. Relevant law

The prima facie elements of a cause of action for fraud are (1) a misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3) intent to defraud, i.e., to induce reliance, (4) justifiable reliance, and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

To establish justifiable reliance, cross-complainants must show that: (1) "the matter was material in the sense that a reasonable person would find it important in determining how he . . . would act" and (2) "it was reasonable for the [cross-complainants] to have relied on the misrepresentation." (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1194.) Typically, "the question of whether reliance is justifiable is one of fact. [Citations.]" (*Ibid.*) Nonetheless, a court can decide the issue as a matter of law "'if reasonable minds can come to only one conclusion based on the facts.' [Citations.]" (*Ibid.*) In circumstances where the absence of justifiable reliance is one of law, the issue can be decided on summary judgment. (*Id.* at pp. 1194–1195.)

B. Analysis

The SACC alleges that cross-complainants relied upon cross-defendants' misrepresentations by entering into the amended license agreements and continuing to grant to Farr its exclusive worldwide licenses. But as the trial court correctly found, Kamen met his initial burden of showing that cross-complainants cannot establish justifiable reliance upon any he made: Except for the January 2009 e-mail, all Kamen's alleged misrepresentations (in the royalty reports and in the 2012 e-

8

mail)² occurred after the agreements and amendments thereto were executed by cross-complainants. And, nothing in the January 2009 e-mail either contains a misrepresentation or caused cross-complainants to change their position on a licensing agreement.

Urging reversal, cross-complainants assert that they did present evidence of justifiable reliance, namely "if Kamen had disclosed and not concealed the true sales of all products and in particular the competing products containing Quercetin, [cross-complainants] would have terminated the agreement, taken back the rights to the licensed products, sold the products themselves for a greater gain than that received under the licensing agreement, and insisted that Farr not sell any competing products containing Quercetin which were diminishing the sales of the licensed products years earlier." According to cross-complainants, pursuant to *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 175 (*Small*), their forbearance from terminating the agreements amounts to actionable reliance.

There are multiple problems with this argument. <u>First</u>, it was not raised below. Thus, it is forfeited on appeal. (*In re C.M.* (2017) 15 Cal.App.5th 376, 385 ["A party may not assert theories on appeal which were not raised in the trial court"].) <u>Second</u>, this is not what cross-complainants allege in the SACC. Because this theory is outside the scope of the SACC, it cannot defeat summary judgment. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) <u>Third</u>, there is no evidence to support

---

²      Separately we note that the 2012 e-mail could not support cross-complainants' fraud claim because it was not sent to them; it was sent to Farr's trademark counsel.

this belated contention.  All Katske states in his declaration is that he and Triurol "continued to grant to Farr . . . the exclusive worldwide license" to "the licensed products to our detriment." There is no evidence that Triurol would have terminated one or both of the amended licensing agreements.

To the extent the trial court determined that cross-complainants seem to be arguing that they would have sued cross-defendants sooner, we agree.  Cross-complainants offer no legal authority in support of their contention that a delay in bringing a lawsuit is the type of forbearance that amounts to justifiable reliance to support a fraud claim.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Cross-complainants' reliance upon *Small* is misplaced.  In *Small*, our Supreme Court addressed "the [limited] issue [of] whether California should recognize a cause of action by persons wrongfully induced to *hold* stock instead of selling it."  (*Small*, *supra*, 30 Cal.4th at p. 171.)  It went on to recognize that that "forbearance from selling stock is sufficient reliance to support a cause of action" for fraud.  (*Id*. at p. 175.)  Nothing in *Small* suggests that its holding should be expanded to include a delayed decision to bring a lawsuit.  (See *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108 ["Justifiable reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which alters his legal relations, and when without such misrepresentation or nondisclosure he would not, in all reasonable probability, have entered into the contract or other transaction"], superseded by statute on other grounds as stated in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.)

**DISPOSITION**

The order and judgment are affirmed.  Kamen is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT


11