Filed 3/18/24  Porporato v. Unchained Labs CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ROBERT W. PORPORATO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>UNCHAINED LABS,<br><br>    Defendant and Respondent. | A167144<br><br>(Alameda County<br>Super. Ct. No.<br>21CV002916) |

**MEMORANDUM OPINION[1]**

Plaintiff and appellant Robert W. Porporato appeals from a summary judgment in favor of his former employer, defendant Unchained Labs (UL).  In August 2021, in the midst of the COVID-19 pandemic, UL adopted a mandatory vaccination policy.  In areas where vaccines were available, employees were required to become vaccinated and to provide "vaccination confirmation" to the Human Resources Department (HR) by August 31st.[2]

---

[1] This appeal is appropriately resolved by Memorandum Opinion pursuant to California Standards of Judicial Administration, section 8.1.

[2] It is undisputed that UL's mandatory vaccine requirement was lawful.  (See Department of Fair Employment and Housing "Information on COVID-19" (Feb. 16, 2022), p. 7 ("DFEH Guidance") <https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2023/03/DFEH-Employment-Information-on-COVID-19-FAQ_ENG.pdf> [as of Mar. 18, 2024].)

Porporato did not provide confirmation he was vaccinated by that date. Accordingly, his employment was terminated a week later, on September 8th.

In November, Porporato filed the instant lawsuit alleging one cause of action—that UL and several of its employees had violated Civil Code section 56.20, subdivision (b), of the Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56 et seq.)[3] by asking for proof of vaccination status. UL and the employees moved for, and were granted, summary judgment.[4]

### *Waiver*

Porporato filed opening and closing briefs that do not contain a single citation to the record, and UL asks that his appeal be dismissed. California Rules of Court, rule 8.204(a)(1)(C) provides that each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears," and it is a "cardinal principle[] of appellate review" that an "appellant who fails to cite accurately to the record forfeits the issue or argument on appeal that is presented

---

[3] The Act consists of more than 40 separate statutes. All further statutory references are to the CMIA unless otherwise indicated.

[4] In his appellant's opening brief, Porporato expressly disclaimed any challenge to the trial court's ruling that the individually named employee defendants could not be subject to liability under the CMIA, stating on page 8 of his opening brief that he "does not address issue [*sic*] of liability in regards to the individually-named Defendants in Appellant's Complaint unless the court [*sic*] since Civ[il] Code [section] 56.36 remedies as applied to individuals is only applicable after a finding of liability based upon the evidence presented at trial. This appeal will focus only on the liability of Defendant/Respondent Unchained Labs arising from its multiple violations of the CMIA, codified as Civil Code [section] 56 et seq." We disregard his effort to raise the issue for the first time in his appellant's closing brief. (See *Starr v. Mayhew* (2022) 83 Cal.App.5th 842, 854 [" ' "arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party" ' "].)

2

without the record reference." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 589; see *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 ["Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record."]; *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."].)

Had Porporato made some effort to support his arguments with appropriate record citations, we might be inclined to overlook this fundamental deficiency in his briefing. However, he provided zero record citations in his opening brief, including his factually laden, two-plus page "Introduction" and his two-page "Factual Background." (Some capitalization & boldface omitted.) In his closing brief, Porporato made no attempt to rectify the problem, even though UL pointed it out in its respondent's brief. To the contrary, Porporato made light of his failure to cite to the record, inviting us to "ignore all of the procedural gripes opposing counsel has and rule on the substantive issues, as this Court has the broad discretion to do." We decline Porporato's invitation to overlook such flagrant disregard of the rules on appeal.

### *No Merit*

Even were we inclined to reach the merits of Porporato's appeal, we would conclude it is meritless. Porporato's claim is based on a single provision of the CMIA, specifically section 56.20, subdivision (b). This statutory provision states, "No employee shall be discriminated against in terms or conditions of employment due to that employee's refusal to sign an authorization under this part. However, nothing in this section shall prohibit

3

an employer from taking such action as is necessary in the absence of medical information due to an employee's refusal to sign an authorization under this part." (§ 56.20, subd. (b).)

Thus, by its plain terms, section 56.20, subdivision (b) requires, as a threshold matter, that an employee be asked to sign an "authorization" for the release of the employee's medical records. "Authorization," for purposes of the CMIA, "means permission granted in accordance with Section 56.11 or 56.21 for the disclosure of medical information." (§ 56.05, subd. (a).) Section 56.11, subdivision (b), in turn, specifies that an "authorization for the release of medical information by a provider of health care, health care service plan, pharmaceutical company, or contractor" is "valid" if it is "handwritten" or "in a typeface" of 14-point font or larger, is set apart from any other writing on the document, has a signature line pertaining solely to the authorization, and is signed and dated by "[t]he patient" or a designated representative. (§ 56.11, subd. (b)(1)–(3)(A)–(B).) Section 56.21 imposes the same requirements for a "valid" authorization for "an employer to disclose medical information."

It is undisputed that Porporato was not presented with, nor asked to sign, any "authorization" for the release of his medical records from any health care provider. He maintains he was effectively asked to do so, however, because *he* was required to provide proof of compliance with UL's mandatory COVID-19 vaccination policy.

To begin with, the CMIA is directed at requests made by *third parties* to health care providers or to employers for copies of a patient's or employee's medical records. (See *Loder v. City of Glendale* (1997) 14 Cal.4th 846, 861 (*Loder*) ["An employer 'discriminates' against an employee in violation of section 56.20, subdivision (b), if it improperly retaliates against or penalizes

4

an employee for refusing to authorize the employee's *health care provider* to disclose confidential medical information *to the employer or others* (see Civ. Code, § 56.11), or for refusing to authorize *the employer* to disclose confidential medical information relating to the employee *to a third party* (see Civ. Code, § 56.21).".) The Act is not directed at, and does not control, the choice—to disclose or not to disclose—*made by the person* whose medical information is sought.

Thus, as the Court of Appeal observed in *Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 990, footnote 11 (*Rossi*), regardless of whether "a literal authorization form is required," "what is important is that there be allegations that the employer was actually seeking the [employee's] permission to obtain [his/]her medical information *from a healthcare provider*. (See §§ 56.05, subd. (a), 56.11.)" What the plaintiff alleged in *Rossi* was that "she was instructed to *personally* provide proof of vaccination to her employer." (*Id.* at p. 990, fn. 11, italics added.) While "that document would include medical information derived from a health care provider, there [was] no allegation that the . . . defendants ever requested that plaintiff authorize her *health care provider* to disclose that information to defendants." (*Ibid.*) The facts of the instant case are the same—UL never sought to obtain Porporato's vaccination record *from a health care provider*. For this reason, alone, Porporato has no claim under section 56.20, subdivision (b).[5]

---

[5] Porporato's reliance on *Kao v. University of San Francisco* (2014) 229 Cal.App.4th 437, is misplaced. As the court in *Rossi* pointed out, the plaintiff in that case, who had refused to undergo a fitness-for-duty examination, was, in fact, presented with a " 'consent form' " related to the requested examination. And "in any event, the [court] was not deciding an issue related to the prima facie elements of [a section 56.20, subdivision (b)]

5

Section 56.20, subdivision (b), further states that "nothing in this section shall prohibit an employer from taking such action as is necessary in the absence of medical information due to an employee's refusal to sign an authorization under this part." In order to have a mandatory COVID-19 vaccination policy, an employer must, of course, be able to determine whether an employee is vaccinated and remove an employee who chooses not to provide proof of such from the workforce. As the Supreme Court observed in *Loder*, in rejecting a section 56.20, subdivision (b) challenge to an employer's mandatory drug testing program, "an employer-mandated medical examination or drug testing procedure obviously would be totally ineffective if an employer could not treat an individual who refuses to permit the employer to learn the ultimate results of the examination in the same fashion as an individual who refuses to complete the test." (*Loder, supra,* 14 Cal.4th at p. 861.)

As noted, there is no dispute that UL's mandatory COVID-19 vaccination policy was lawful. In March 2021, the State Department of Fair Employment and Housing ( now the Civil Rights Department) issued guidance information advising private employers they could adopt a mandatory COVID-19 vaccination policy so long as the policy did not discriminate on the basis of a protected characteristic, provided reasonable accommodations related to disability and sincerely held religious beliefs, and did not retaliate against an employee for exercising a protected right, for example, requesting reasonable accommodation. (See Department of Fair Employment and Housing "Information on COVID-19" (Mar. 4, 2021), p. 7 <https://www.seiinc.org/uploads/1/1/2/6/11264215/dfeh_employment_informat

---

claim, but rather the sufficiency of the evidence to support the necessity exception." (*Rossi, supra,* 94 Cal.App.5th at p. 990, fn. 11.)

ion_on_covid-19.pdf> [as of Mar. 18, 2024].) And in conjunction therewith, employers could ask for proof of vaccination on providing assurance the information would be kept confidential. (31 No. 10 Cal. Emp. L. Letter 1 (March 22, 2021) [summarizing guidance bulletins issued by the Department of Fair Housing and Employment]; see DFEH Guidance, *supra,* at p. 10 <https://calcivilrights.ca.gov/wp-content/uploads/sites/32/2023/03/DFEH-Employment-Information-on-COVID-19-FAQ_ENG.pdf> [as of Mar. 18, 2024] [employer with mandatory vaccine policy may ask employees for proof of vaccination].) It is undisputed that UL's mandatory COVID-19 vaccination policy allowed for bona fide religious and medical exemptions as required by the FEHA guidance.

In his appellant's opening brief, Porporato made no reference to any request for a religious or medical exemption, let alone provided record citations of such. Nor, in his appellant's closing brief, did he make any reference to any exemption request in responding to UL's brief, wherein UL pointed out its mandatory vaccination policy allowed such exemptions.

At oral argument, counsel stated Porporato requested a religious exemption which was denied, although counsel provided no record citations to such.[6] Our own review of the record discloses that in his complaint Porporato included the following allegation: That after notifying the HR department

---

[6] Counsel referred to the deposition testimony of Christine Lau but provided no page reference. Furthermore, the trial court sustained UL's objection to this deposition testimony, and Porporato did not challenge this evidentiary ruling in his briefs. We therefore disregard the testimony. (See *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 ["we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument"]; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 ["[T]here is no separate argument heading or analysis of the issue. That alone is grounds to deem the argument waived."].)

that he " 'revoke[d] any consent I may or may not have provided you in the past, express or implied' " to " 'ANY disclosure' " of his " 'medical information,' " he received a response from employee Shelly Morales which stated in pertinent part:

> " 'Bob, My attempted followup [*sic*] with you was regarding the accommodation that you are requesting in light of the religious exemption you have sought from [UL's] vaccination policy. As you know, [UL] initially asked for further documentation pertaining to your request for a religious exemption, given that you initially request[ed] not to get the vaccine for what appeared to be purely secular reasons, following that you said you were going to explore obtaining a medical exemption but were unable to get one from your doctor, and you said that when it came to your religious beliefs, your religious faith is in God but not a church full of clergy men and women, even though you subsequently provided a statement from a clergy member apparently associated with a church. Nevertheless, we have reviewed your religious exemption request and asked what alternative accommodations you are requesting, to engage in a thorough interactive dialogue with you to determine whether we can grant an accommodation. We understand that your only request is to not get vaccinated against the COVID virus. You have also previously asked whether there were alternatives that [UL] would allow, and you gave examples of fever screening at the front door, completing a questionnaire before/upon entry to the facilities, and offsetting hours like working on the weekends. We have considered each of these potential alternatives to taking the vaccine, along with other potential measures, including remote work, social distancing, and changes to the workplace such as the insertion of plexiglass barriers in the lab. After detailed consideration of each of these potential accommodations, with respect to your position, we have concluded that we are unable to provide them without causing an undue hardship to [UL]. . . . Your role as Director of SW Test is a leadership role with [UL], requiring extensive in-person work in our lab and other facilities. It also requires you to interface directly with numerous employees and others, . . . Moreover, a significant portion of your job requires that you work closely together with other individuals on particular equipment and devices. . . . As you know this work requires close contact for extended periods of time. . . . This work cannot be performed remotely . . . , cannot be performed alone, and individuals performing this work

8

cannot be separated by plexiglass or other barriers. . . . [W]hile we have considered fever and other screening measures at the door and pre-entry questionnaires, as well as proof of negative COVID tests, we do not believe any of those measures would adequately protect the safety of other employees. It is clear from CDC and other guidance that individuals who do not show any symptoms of the virus may still carry and transmit it. . . . Accordingly, we believe there would be a significant risk to the safety and health of our employees to grant any of these accommodations. . . .' "

This allegation confirms that UL's mandatory vaccination policy included the exemptions required by the FEHA. More significantly, while Porporato quoted this communication in the "preliminary summary of the facts of [the] case" set forth in his complaint, he did not allege any cause of action, under the FEHA or any other anti-discrimination law, that UL engaged in unlawful discrimination in denying either a religious or medical exemption. Rather, he advanced a single cause of action entitled "Violations of the Confidentiality of Medical Information Act as codified within California Civil Code [section] 56.20(b)." (Italics omitted.)

Nor did Porporato make any discrimination claim in the trial court in opposing UL's motion for summary judgment. Indeed, such an argument would have been improper in opposing UL's motion for summary judgment. (See *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [plaintiff cannot defeat summary judgment by advancing claims not pled in complaint].) Rather, Porporato argued UL had violated the CMIA in "four main ways"—one, UL terminated his employment based on his "refusal to authorize" UL to obtain "medical information about him"; two, UL's mandatory vaccination policy "ended up extorting medical information" based on "medical information it had obtained about him without first seeking the required authorization"; three, in the process of terminating his employment,

9

UL employees "discussed" his "confidential medical information with each other"; and four, by implementing its mandatory vaccination without obtaining the required authorization under the CMIA. (Boldface & italics omitted.) He also took issue with what he called UL's "necessity" defense, arguing there were "reasonable accommodations" that "could have been made," citing to his declaration in opposition wherein he generically asserted the accommodations he had suggested to UL and UL had rejected were feasible.

In its reply memorandum, UL pointed out the pivotal issue was whether Porporato had ever been asked to provide an "authorization" under the CMIA and was "retaliated against" for not doing so. It further pointed out, he had never advanced any failure to accommodate or other discrimination claim.

As we have discussed, UL's position was well taken. Accordingly, there was no reason for the trial court to consider Porporato's generic assertion that "accommodations" could have been extended. Nor did it.

## DISPOSITION

The judgment is AFFIRMED. Respondent to recover costs on appeal.

10

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Castro, J.*


**Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A167144, Porporato v. Unchained Labs

11