*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-1091

FILED **02/01/2018**
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

KATARINA STRAUGHN, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-71-16)

(Submitted September 28, 2017                    Decided December 19, 2017*)

*Krista N. DeSmyter* was on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the statement was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the statement was filed, filed a statement in lieu of brief.

*Sarah O. Rollman* was on the brief for intervenor.

*Mark H. Dho* entered an appearance for intervenor.

---

\*    The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of petitioner's motion to publish.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and NEBEKER, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Katarina Straughn challenges an order denying her claim for workers' compensation benefits. We vacate and remand for further proceedings.

## I.

The evidence presented to the Administrative Law Judge (ALJ) was as follows. In September 2014, while working for intervenor Washington Metropolitan Area Transit Authority (WMATA), Ms. Straughn hit her right knee against a metal beam. She sought medical treatment at a hospital that day for severe pain in her right knee. Ms. Straughn started seeing Dr. Rida Azer in October 2014 for treatment of her right-knee pain. Dr. Azer initially diagnosed Ms. Straughn with a right-knee contusion. Dr. Azer subsequently concluded that Ms. Straughn had "an avulsion tear of the medial lateral ligament with traumatic synovitis." An October 2014 MRI test contradicted Dr. Azer's diagnosis, indicating that there was no ligament tear and that Ms. Straughn instead suffered from chondromalacia and mild arthritis.

Ms. Straughn visited Dr. Azer several more times over the next few months with continued complaints of right-knee pain. Starting in January 2015, Dr. Azer suggested arthroscopic surgery as an option for Ms. Straughn. In July 2015, Dr. Azer diagnosed Ms. Straughn with a possible tear of the right-quadriceps tendon. Dr. Azer opined that the tear was caused by Ms. Straughn's September 2014 injury. Dr. Azer further opined, "The patient's condition in the right knee itself will need arthroscopic surgery. If there is a tear in the quadriceps, this will need a small incision for reconstruction." Ms. Straughn underwent another MRI in July 2015. In August 2015, Dr. Azer noted that Ms. Straughn's July 2015 MRI was unchanged from the previous MRI, showing chondromalacia and arthritis. Dr. Azer continued to diagnose Ms. Straughn with a "[r]ight knee contusion" and suggest "diagnostic and therapeutic arthroscopy" along with a probable reconstruction of a torn quadriceps. Dr. Azer also concluded that Ms. Straughn was medically unable to work during a period including December 5, 2015, to January 4, 2016.

Dr. David Johnson examined Ms. Straughn in June 2015 at WMATA's request. He initially suspected that there might be a quadriceps tear, but he recommended against arthroscopy because that procedure would not identify such an injury. After reviewing the MRIs, Dr. Johnson opined that Ms. Straughn's symptoms were the result of arthritis that preexisted the workplace incident; that

because there was no difference in her condition between the two MRIs, the workplace incident did not accelerate her preexisting arthritis; that although the workplace incident might have temporarily exacerbated the symptoms of her preexisting arthritis, any such exacerbation had resolved by November 2014; and that there was no quadriceps injury or any other type of injury that warranted arthroscopic surgery.

Ms. Straughn filed a claim seeking temporary total disability benefits from December 5, 2015, to January 4, 2016; authorization for arthroscopic surgery to her right knee; and payment of related medical expenses. At a hearing, Ms. Straughn testified that she had no knee pain before the September 2014 accident and that she continued to suffer knee pain at the time of the hearing.

The ALJ denied Ms. Straughn's claim, concluding that Ms. Straughn had failed to carry her burden of establishing a causal link between her workplace injury and either her claimed temporary disability or the proposed arthroscopic procedure. The ALJ gave a number of reasons for that conclusion, including that: (1) Dr. Azer's description of the proposed arthroscopy as "diagnostic and therapeutic" suggested that Dr. Azer did not have a firm diagnosis of Ms. Straughn's condition; (2) the MRIs and other diagnostic evidence did not support Dr. Azer's diagnoses of a tear of the medial lateral ligament or the quadriceps, but

rather supported a diagnosis of arthritis and chondromalacia; (3) Dr. Azer continued to diagnose Ms. Straughn with a right-knee contusion even after the MRIs indicated the presence of arthritis and chondromalacia; (4) Dr. Azer did not clearly explain why he believed that there might be a quadriceps tear, despite the absence of evidence of such a tear on the MRIs; and (5) Dr. Azer never suggested that the arthritis and chondromalacia were work-related, and Dr. Johnson opined to the contrary that Ms. Straughn had suffered temporary injury that had resolved without aggravating the arthritis. The ALJ did not explicitly discuss Ms. Straughn's testimony that she had not suffered any knee pain before the September 2014 injury.

Ms. Straughn sought review before the Compensation Review Board (CRB), arguing among other points that the ALJ had failed to address Ms. Straughn's testimony. The CRB affirmed, stating that Dr. Azer did not supply a medical rationale for the arthroscopic procedure and that Ms. Straughn could not "fill the void in her evidence with her own testimony." The CRB also determined that Ms. Straughn did not challenge the ALJ's denial of temporary total disability benefits, so it did not review that denial.

**II.**

We review a decision of the CRB to determine whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). "Our principal function in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues." *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 916 A.2d 149, 151 (D.C. 2007) (internal quotation marks omitted).

As previously noted, the CRB concluded that Ms. Straughn was challenging only the denial of medical benefits. In this court, Ms. Straughn seeks relief as to both medical benefits and temporary total disability benefits. Ms. Straughn, however, does not address the CRB's determination that she failed to raise the issue of temporary total disability benefits before the CRB. "[I]n the absence of exceptional circumstances, we will not entertain a claim that was not raised before the agency." *Stackhouse v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 636, 639 (D.C. 2015) (internal quotation marks omitted); *see also Wilson Sporting Goods Co. v. Hickox*, 59 A.3d 1267, 1272 n.4 (D.C. 2013) (issue not briefed by

appellant was not properly before court). We see no exceptional circumstances, and we therefore limit our discussion to medical benefits.

Ms. Straughn raises four arguments: (1) Dr. Johnson's opinion was "nonsensical," because that opinion drew inferences about Ms. Straughn's pre-injury condition based on a comparison of two post-injury MRIs; (2) the ALJ unfairly criticized Dr. Azer for persisting in a diagnosis of a torn ligament even after the MRIs indicated that there was no such tear; (3) the ALJ incorrectly believed that the MRIs undermined Dr. Azer's diagnosis of a tear of the quadriceps tendon; and (4) the ALJ erroneously failed to consider Ms. Straughn's testimony that she had not suffered right-knee pain before the September 2014 injury, and the CRB failed to correct that error.

We are not persuaded by Ms. Straughn's first three arguments. First, Dr. Johnson reasoned that the October 2014 MRI and the July 2015 MRI did not show a difference in the extent of Ms. Straughn's arthritis, suggesting that the September 2014 injury did not cause Ms. Straughn's arthritis to accelerate but instead caused a temporary worsening that then resolved. It is possible, as Ms. Straughn implies, that the September 2014 injury could have permanently aggravated Ms. Straughn's condition, leaving her in a stable but worsened state. But Dr. Johnson's contrary inference is not facially implausible, and the ALJ could reasonably rely on it as

part of the evidence tending to undermine Ms. Straughn's claim. *Cf. Jones v. District of Columbia Dep't of Emp't Servs.*, 41 A.3d 1219, 1221 (D.C. 2012) ("[T]he mere existence of substantial evidence contrary to [the agency's] findings does not allow this court to substitute its judgment for that of the [agency].") (internal quotation marks omitted). Second, the ALJ faulted Dr. Azer for persisting in a diagnosis of a right-knee contusion, not for persisting in a diagnosis of a torn ligament. And Dr. Azer did persist in the diagnosis of a right-knee contusion even after the MRI indicated other explanations for Ms. Straughn's condition. Third, the ALJ could reasonably accept Dr. Johnson's conclusion that the MRIs showed no evidence of a tear of, or other trauma to, the quadriceps.

On the other hand, we agree with Ms. Straughn that remand is required because the ALJ failed to address Ms. Straughn's testimony that she felt no right-knee pain until her injury. If credited, that testimony could tend to undermine a conclusion that Ms. Straughn's symptoms were attributable to preexisting arthritis, given the apparent absence of any symptoms of that arthritis before the injury. Moreover, if preexisting arthritis did not explain Ms. Straughn's symptoms, that arguably would provide support for Dr. Azer's recommendation of exploratory arthroscopy.

Although the ALJ did not discuss Ms. Straughn's testimony, the CRB declined to remand, concluding that Dr. Azer did not supply a medical rationale for the arthroscopic procedure and Ms. Straughn could not "fill the void in her evidence with her own testimony." We are not persuaded by that analysis. For the reasons we have just stated, Ms. Straughn's testimony, if credited, tended to support Ms. Straughn's medical evidence and undermine the medical evidence introduced by WMATA. In determining whether Ms. Straughn's evidence was sufficient to establish a causal connection between the September 2014 injury and the recommended medical procedure, the ALJ was required to address the implications of Ms. Straughn's testimony. A remand is therefore necessary. *See, e.g.*, *Clark v. District of Columbia Dep't of Emp't Servs.*, 772 A.2d 198, 204 (D.C. 2001) (remanding where hearing examiner did not address doctor's deposition stating that workplace condition aggravated claimant's preexisting condition).

For the foregoing reasons, we vacate the order of the CRB and remand the case for further proceedings.

*So ordered.*