*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-667

DISTRICT OF COLUMBIA PUBLIC SCHOOLS, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

KIMBERLY TOMLIN, INTERVENOR.

FILED 09/13/2018
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
(CRB-27-17)

(Argued June 6, 2018                     Decided September 13, 2018)

*Irina M. Majumdar*, Assistant Attorney General, for appellee. *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, and *Mary L. Wilson*, Senior Assistant Attorney General, were on the brief for petitioner.

*Tonya A. Robinson*, General Counsel for the District of Columbia Department of Employment Services, filed a statement in lieu of brief in support of the respondent.

*Krista N. DeSmyter*, with whom *Kevin H. Stillman* was on the brief, for intervenor.

Before THOMPSON and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

THOMPSON, *Associate Judge*:    Petitioner District of Columbia Public Schools ("DCPS") seeks review of a Compensation Review Board (the "CRB" or the "Board") decision affirming a February 17, 2017, compensation order (the "Compensation Order")

that reinstated intervenor Kimberly Tomlin's temporary total disability (TTD) wage loss benefits and medical benefits related to a concussion Ms. Tomlin sustained in 2008. DCPS argues that the CRB erred in holding that DCPS's submission of medical evidence showing that Ms. Tomlin's concussion had resolved years before the hearing did not satisfy DCPS's initial burden of production because that evidence was not "current." For the reasons stated herein, we remand for clarification and reconsideration in light of this opinion.

## I.

The record discloses that on September 4, 2008, Ms. Tomlin fell and struck her head on a concrete floor while working for DCPS as a dedicated aide for a student with special needs. That same month, Ms. Tomlin came under the care of neurologist Dr. Michael E. Batipps. Dr. Batipps diagnosed Ms. Tomlin with, *inter alia*, post-traumatic cervical, right shoulder, thoracic, lumbosacral, hip, and knee strain as well as a "head injury with mild concussion due to [fall at work]" and "[p]ost concussion syndrome." The Office of Risk Management (ORM) accepted Ms. Tomlin's claim for TTD and medical benefits based on a "concussion with strains and bruising of the cervical/lumbar spine" and related injuries.

On December 29, 2008, at Dr. Batipps's request, Ms. Tomlin underwent an MRI scan on her brain, which returned normal results. Five months later, Dr. Batipps saw Ms.

Tomlin again, noted the results of her brain scan, and reported that she "no longer has dizziness and other postconcussion symptoms." Dr. Batipps opined in his May 6, 2009, report of that visit that "[t]he symptoms of postconcussion syndrome . . . have now resolved." Dr. Batipps observed that Ms. Tomlin "continue[d] to have frequent headaches," but opined that the headaches "stemmed from occipital cervical pains" and were "a direct result of the [cervical injury and] cervical strain and disc herniation triggering posterior headaches and occipital tenderness." Although Dr. Batipps concluded in May 2009 that Ms. Tomlin had recovered from her concussion, he opined in a number of reports issued in 2010 that she continued to be totally disabled due to cervical, lumbosacral, and right shoulder pain.

On May 6, 2014, Ms. Tomlin reported to Dr. Louis Levitt for an independent medical examination. Dr. Levitt concluded that Ms. Tomlin was at "maximum medical improvement" and that she was malingering, as there was "no evidence of [any] objective measure of pathology that would warrant care." Based on Dr. Levitt's opinion, ORM terminated Ms. Tomlin's TTD and medical benefits, effective August 7, 2014.

Ms. Tomlin appealed the termination, and on November 25, 2014, an evidentiary hearing took place before a Department of Employment Services (DOES) Administrative Law Judge (ALJ). After the hearing, the ALJ determined that he lacked subject-matter jurisdiction over the claim. The CRB reversed that ruling and remanded the matter to the ALJ "to determine if [Ms. Tomlin] remains unable to return to work due to the injuries to

her cervical and lumbar spine and the concussion she sustained on September 4, 2008, consistent with the prevailing case law in *Mahoney v.* [*District of Columbia*] *Public Schools*, CRB No. 14-067 (November 12, 2014)."[1] The remand hearing was held on November 8, 2016.[2]

On February 17, 2017, the ALJ issued the Compensation Order, denying Ms. Tomlin's claim for reinstatement of TTD and medical benefits related to her lumbar

_____

[1] In *Mahoney*, the CRB articulated a burden-shifting standard to be applied in cases where a beneficiary challenges the modification or termination of his or her disability benefits:

> The employer first has the burden of producing current and probative evidence that [the] claimant's condition has sufficiently changed to warrant a modification or termination of benefits. If the employer fails to present this evidence[,] then the claim fails[,] and the injured worker's benefits continue unmodified or terminated.
>
> If the employer meets its initial burden, then the cla[i]mant has the burden of producing reliable and relevant evidence that conditions have not changed to warrant a modification or termination of benefits. If this burden is met, then the evidence is weighed to determine whether [the] employer met its burden of proving by a preponderance of the evidence that [the] claimant's benefits should be modified or terminated.

*Mahoney*, CRB No. 14-067, at 7. This court has acknowledged that "the *Mahoney* framework is a proper interpretation of" the worker's compensation statutory scheme. *See Ross v. District of Columbia Dep't of Emp't Servs.*, 125 A.3d 698, 701–03 (D.C. 2015).

[2] DCPS has filed a motion to supplement the record with a transcript of this hearing. That motion is hereby granted.

and cervical condition, but granting her request for reinstatement of benefits based on her concussion. As to Ms. Tomlin's claimed lumbar and cervical condition, the ALJ accepted the opinion of Dr. Levitt that Ms. Tomlin was feigning illness, and that she had no "active musculoskeletal process that requires care," no "disc herniation to the cervical or lumbar spine" or "disuse changes or neurologic deficits to [her] upper or lower extremities," and was "capable of returning to work." As to Ms. Tomlin's claim based on her 2008 concussion, the ALJ noted that "Dr. Levitt made no causal relationship finding regarding the condition of concussion" and reasoned that DCPS "ha[d] not met its burden" under *Mahoney* of producing evidence showing a sufficient change in Ms. Tomlin's "condition of concussion" to warrant the termination of benefits. Consequently, the ALJ determined that DCPS "improperly terminated benefits for [Ms. Tomlin's] accepted condition of concussion."

DCPS appealed the Compensation Order to the CRB, arguing that the ALJ's determination that DCPS failed to meet its burden of production under *Mahoney* was "error[,] as the ALJ ignored medical evidence which shows [Ms. Tomlin's] concussion had resolved less than one year after her workplace incident." In resolving the appeal, the CRB wrote as follows:

> As *Mahoney* states, it is the [e]mployer's burden to first produce reliable, probative and current evidence of a change prior to the date benefits were modified or terminated. None of the evidence presented by [DCPS] regarding the concussion meets this standard. Notably, [DCPS's] evidence relating to [Ms. Tomlin's] concussion, the medical opinions

of Dr. Richard Restak [from June 2009] and Dr. Daniel Glor [from May 2009,] were over 5 years old at the time of the Formal Hearing. Thus, it cannot be said that the medical evidence pointed out by [DCPS] was current.

The CRB also observed that "Dr. Levitt does not appear to mention concussions at all," which was "in contrast to his detailed examinations and conclusions regarding [Ms. Tomlin's] cervical and lumbar condition." The CRB found from its review that "at no time did [Dr. Levitt] render an opinion regarding [Ms. Tomlin's] concussion symptoms." For these reasons, the CRB upheld the ALJ's determination that DCPS had not carried its burden of production and affirmed the Compensation Order.

Ms. Tomlin has not sought review of the CRB's decision upholding the termination of benefits based on injuries to her spine and extremities. DCPS petitioned for review of the decision upholding the reinstatement of benefits relating to the concussion. DCPS asserts that the CRB's interpretation of the word "current" as used in *Mahoney* was "contrary not only to common sense but also to" the statutory definition of a "change of condition." DCPS further contends that "Dr. Batipps's [May] 2009 medical report[] that the concussion and concussion syndrome had resolved *at that time*" "remained 'current' [evidence] because it spoke to the state of affairs from 2009 forward, including at the time of the hearing in 2014."

**II.**

"We review a decision of the CRB to determine whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Straughn v. District of Columbia Dep't of Emp't Servs.*, 176 A.3d 125, 127 (D.C. 2017) (internal quotation marks omitted). "[W]e review the decision of the Board," but in doing so, "we cannot ignore the compensation order which is the subject of the Board's review." *WMATA v. District of Columbia Dep't of Emp't Servs.*, 926 A.2d 140, 147 (D.C. 2007). Although general principles of administrative law require us to "accord deference to [the CRB's] reasonable interpretation of its own precedents," *see Glob. Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001), our review of the agency's legal conclusions is de novo. *Jones v. District of Columbia Dep't of Emp't Servs.*, 158 A.3d 906, 909 (D.C. 2017).

**III.**

Under the public sector workers' compensation scheme, the government may modify or terminate an award of compensation if the government "has reason to believe a change of condition has occurred." D.C. Code § 1-623.24 (d)(1) (2012 Repl.). A change of condition exists if, for example, "[t]he disability for which compensation was paid has ceased or lessened." *Id.* § 1-623.24 (d)(4)(A).

We agree with DCPS that Dr. Batipps's May 2009 opinion that Ms. Tomlin's concussion and concussion syndrome had resolved as of that time was evidence that the concussion-related disability for which compensation was paid had ceased or lessened by the time DCPS terminated Ms. Tomlin's worker's compensation benefits in 2014. In addition, although Ms. Tomlin's counsel asserted in her opening statement at the November 2014 hearing that Ms. Tomlin "still suffers from the headaches and concentration problems from the concussion" and that Ms. Tomlin continued to take the medication Gabapentin "because of the ongoing post-concussive type of syndrome or symptoms," no evidence of current concussion symptoms was presented during either hearing. Ms. Tomlin did not testify about difficulty concentrating, and while she testified that she still experienced headaches in the back of her head, she explained that she had been told by her doctors that her headaches were coming from "a pinched nerve" in her neck. She also explained that Dr. Batipps had prescribed Gabapentin to help with the nerve damage and headaches related to "whatever is going on in the back of [her] spine." Thus, her understanding of the source of her claimed symptoms was as Dr. Batipps described in 2009: that the headaches were "a direct result of cervical strain and disc herniation." She did not claim that the headaches were a continuing concussive symptom.

In sum, while substantial evidence supports the CRB's conclusion that Dr. Levitt did not address whether Ms. Tomlin's concussive symptoms had resolved, there is ample

other record support for DCPS's position that Ms. Tomlin had a change of condition not only with respect to her spinal and extremities conditions, as the ALJ found, but also as to her concussive condition. Indeed, we agree with DCPS that Ms. Tomlin "submitted no evidence of any kind" to "show that she remained disabled as a result of her 2008 concussion" and no evidence showing that her concussion had not, in fact, ceased or lessened.[3]

We also agree with DCPS that it is unreasonable and contrary to this court's case law to construe the term "current" as used in *Mahoney* to require DOES to ignore a medical opinion that a condition has resolved solely because the opinion is years old by the time of a hearing on whether there has been a change in condition. While there is some overlap between the concepts of "currentness" and "recentness," the two concepts

---

[3] Quite the contrary, a DCPS filing in the record indicates that Ms. Tomlin proffered as one of her exhibits (Claimant's Exhibit 7) an April 15, 2016, medical report by Dr. Ronjeet Reddy, who stated that Ms. Tomlin was "[n]egative for headaches, numbness/tingling, paresthesias, weakness, confusion, dizziness, fainting, memory loss, seizures, speech disorder, tremor or vertigo." (It appears, however, that Dr. Reddy's report, admission of which the ALJ took under advisement, was never actually admitted into evidence.) We also note that Ms. Tomlin's counsel, in response to the ALJ's questions at the November 8, 2016, hearing, "[W]hat's wrong with [Ms. Tomlin]? What can I find that keeps her from working specifically?", answered only that "the injury to her neck has not resolved"; that she "suffers from spinal stenosis of the cervical spine" and from stenosis, radiculopathy, and disc degeneration of the lumbar spine; and that she has osteoarthritis of the knee.

are not one and the same.[4] *Compare Current with Recent*, *Merriam Webster's Collegiate Dictionary* (11th ed. 2003) (defining "current" as "presently elapsing," "occurring in or existing at the present time," or "most recent," among other things; and "recent" as "having lately come into existence," or "of or relating to a time not long past."). Indeed, there are many circumstances that are "current" inasmuch as they pertain to the present time, but are not at all "recent" (e.g., Washington, D.C. is the current capital of the United States, as it has been since 1790).

Although "a patient's condition may change over the years," *Changkit v. District of Columbia Dep't of Emp't Servs.*, 994 A.2d 380, 388 (D.C. 2010), a medical report that can reasonably be read to pertain to a claimant's condition as it exists at the time of a hearing (and thus is "current" in that sense), that has not obviously been superseded by a later report, and that the employer relies on to meet its burden of production in a proceeding governed by *Mahoney*, should not be disregarded solely because of its date.[5]

---

[4]  *See Comm'r of Internal Revenue v. Keller*, 59 F.2d 499, 501 (7th Cir. 1932) ("The word 'current,' when used as an adjective, has many and diverse meanings . . . .").

[5]  Thus, we agree with DCPS that "[e]vidence that an injury resolved long before the hearing is [at least on its face] evidence that the injury remains resolved at the time of the hearing." We also note that nothing in the public sector workers' compensation statute requires the government to act to terminate benefits within a time certain or at the earliest possible time after receiving notice of a reason to believe that a "disability for which compensation was paid has ceased or lessened." D.C. Code § 1-623.24 (d)(4)(A).

Our case law does not permit an interpretation that evidence must be recently obtained to be deemed material and probative. As we explained in *Changkit*:

> If the ALJ intended . . . to suggest that the views of the two initial treating physicians were so stale as to be irrelevant and unworthy of any consideration . . . then that suggestion is surely unreasonable. At the very least, in this kind of case, "the past is prologue," and it sheds much needed light upon the contested present. It is difficult to understand how a physician (or a trier of fact) could determine whether the patient's condition has improved sufficiently to warrant termination of benefits without a thorough examination and understanding of the nature of the patient's injuries and of his or her condition at the time they were incurred or soon thereafter.

994 A.2d at 388–89.[6]

The foregoing does not, however, lead us to conclude that an outright reversal of the CRB's decision is warranted. The reason pertains to which exhibits DCPS was entitled to rely on to meet its burden of production under *Mahoney*.

The record shows that DCPS did not offer Dr. Batipps's May 2009 reevaluation (opining that Ms. Tomlin's postconcussion syndrome symptoms had resolved) into

---

[6] We also note that, during the November 2014 hearing, Ms. Tomlin's counsel argued forcefully that Dr. Batipps's May 2009 report was "very necessary" to admit. Counsel did so in response to the ALJ's remark that "the neurologic report of Dr. Batipps goes all the way back to May 2009. Why would I need that if [Ms. Tomlin was] terminated in 2014?"

evidence in connection with the initial hearing in November 2014, and DCPS also did not assert that its November 2014 hearing exhibits included any exhibits submitted by Ms. Tomlin. DCPS offered, and the ALJ admitted, medical reports from only Drs. Levitt, Collins, Restak, and Glor. In addition, during the 2014 hearing, DCPS did not argue that Dr. Batipps's opinion evinced a change of Ms. Tomlin's concussion condition.

In connection with the November 8, 2016, hearing, DCPS did list the "Neurological reevaluation by Dr. Batipps from May, 2009" among its proffered exhibits. However, the ALJ took under advisement whether to admit Dr. Batipps's May 2009 "reevaluation" into evidence, and we see no indication in the record that the reevaluation was ever admitted as an employer's exhibit. It appears, though (as DCPS pointed out in its appeal to the CRB), that Dr. Batipps's May 2009 reevaluation *was* admitted as one of Ms. Tomlin's exhibits — specifically, as Claimant's Exhibit 2. One question we face, therefore, is whether DCPS could meet its burden of production with respect to a change in Ms. Tomlin's concussion condition by reliance on a medical report included among claimant Tomlin's exhibits, when the ALJ (apparently) declined to admit the report as an employer exhibit. We are not aware of either this court or the CRB having previously addressed the issue.[7] But we suspect that the ALJ and the CRB assumed or tacitly

---

[7] *But cf. Hutton v. Fidelity Nat'l Title Co.*, 152 Cal. Rptr. 3d 584, 593 n.10 (Cal. Ct. App. 2013) ("[I]n determining whether the defendant's burden of production was met, the court may consider evidence supplied by the plaintiff's opposition that filled a gap in the defendant's showing").

applied a policy that an employer must meet its *Mahoney* burden of production with its own admitted exhibits (notwithstanding the fact that the ALJ typically receives *all* the evidence before analyzing whether the burden of production has been met). We have this suspicion because (1) neither the Compensation Order nor the CRB's decision mentions Dr. Batipps's May 2009 opinion regarding the resolution of Ms. Tomlin's concussive symptoms,[8] and (2) the CRB decision mentions the reports by Drs. Restak and Glor, which were submitted into evidence by DCPS, in its discussion of reports that were not "current."[9]

We conclude that a remand is necessary for the CRB and the ALJ to (1) clarify their reasoning with respect to the non-discussion of Dr. Batipps's May 2009 reevaluation; and, if it is determined that no procedural basis exists for disregarding Dr. Batipps's May 2009 reevaluation, to (2) reconsider in light of this opinion whether DCPS met its burden of production as to a change in Ms. Tomlin's concussion condition and whether Ms. Tomlin was entitled to reinstatement of her wage loss and medical benefits.

---

[8] This is despite DCPS's repeated argument to the CRB that "Dr. Batipps definitively concluded after reviewing the results of [Ms. Tomlin's] brain MRI that her concussion and postconcussion syndrome had 'now resolved.'"

[9] Parenthetically, it is not clear to us why the CRB mentioned Drs. Restak and Glor in its discussion of whether there was current medical evidence regarding Ms. Tomlin's concussion condition. Dr. Glor's reports do not mention the concussion at all. Dr. Restak's June 24, 2009, report "note[s] from [Ms. Tomlin's] neurologist's report of 05/06/2009 that it was his impression that the symptoms of post-concussion syndrome had totally resolved," but Dr. Restak himself did not opine about the concussion condition.

If either party is aggrieved by the CRB's decision(s) on remand, the aggrieved party may seek further review by this court.


*So ordered.*