# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-318

KATARINA STRAUGHN, PETITIONER,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(CRB-16-18)

(Submitted February 12, 2019                    Decided June 11, 2019[*])

*Krista N. DeSmyter* and *Kevin H. Stillman* were on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General at the time the statement was filed, filed a statement in lieu of brief for respondent.

*Sarah O. Rollman* and *Mark H. Dho* were on the brief for intervenor.

Before THOMPSON and MCLEESE, *Associate Judges*, and WASHINGTON, *Senior Judge*.

MCLEESE, *Associate Judge*:  Petitioner Katarina Straughn challenges an order

denying her claim for workers' compensation benefits.  We affirm.

---

[*]    The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published upon the court's grant of intervenor's motion to publish.

**I.**

This case has previously been before this court. *Straughn v. District of Columbia Dep't of Emp't Servs.*, 176 A.3d 125 (D.C. 2017). The following summary of the underlying circumstances is largely taken from our earlier opinion.

In September 2014, while working for intervenor Washington Metropolitan Area Transit Authority (WMATA), Ms. Straughn hit her right knee against a metal beam. She sought medical treatment at a hospital that day for severe pain in her right knee. Ms. Straughn started seeing Dr. Rida Azer in October 2014 for treatment of her right-knee pain. Dr. Azer initially diagnosed Ms. Straughn with a right-knee contusion. Dr. Azer subsequently concluded that Ms. Straughn had "an avulsion tear of the medial lateral ligament with traumatic synovitis." An October 2014 MRI test contradicted Dr. Azer's diagnosis, indicating that there was no ligament tear and that Ms. Straughn instead suffered from chondromalacia and mild arthritis.

Ms. Straughn visited Dr. Azer several more times over the next few months with continued complaints of right-knee pain. Starting in January 2015, Dr. Azer suggested arthroscopic surgery as an option for Ms. Straughn. In July 2015, Dr.

Azer diagnosed Ms. Straughn with a possible tear of the right-quadriceps tendon. Dr. Azer opined that the tear was caused by Ms. Straughn's September 2014 injury. Ms. Straughn underwent another MRI in July 2015. In August 2015, Dr. Azer noted that Ms. Straughn's July 2015 MRI was unchanged from the previous MRI, showing chondromalacia and arthritis. Dr. Azer continued to diagnose Ms. Straughn with a "[r]ight knee contusion" and suggest "diagnostic and therapeutic arthroscopy" along with a probable reconstruction of a torn quadriceps. Dr. Azer also concluded that Ms. Straughn was medically unable to work during a period including December 5, 2015, to January 4, 2016.

Dr. David Johnson examined Ms. Straughn in June 2015 at WMATA's request. He initially suspected that there might be a quadriceps tear, but he recommended against arthroscopy because that procedure would not identify such an injury. After reviewing the MRIs, Dr. Johnson opined that Ms. Straughn's symptoms were the result of arthritis that preexisted the workplace incident; that because there was no difference in her condition between the two MRIs, the workplace incident did not accelerate her preexisting arthritis; that although the workplace incident might have temporarily exacerbated the symptoms of her preexisting arthritis, any such exacerbation had resolved by November 2014; and

that there was no quadriceps injury or any other type of injury that warranted arthroscopic surgery.

Ms. Straughn filed a claim seeking temporary total disability benefits from December 5, 2015, to January 4, 2016; authorization for arthroscopic surgery to her right knee; and payment of related medical expenses. At a hearing, Ms. Straughn testified that she had no knee pain before the September 2014 accident and that she continued to suffer knee pain at the time of the hearing.

The ALJ denied Ms. Straughn's claim, concluding that Ms. Straughn had failed to carry her burden of establishing a causal link between her workplace injury and either her claimed temporary disability or the proposed arthroscopic procedure. Ms. Straughn sought review before the Compensation Review Board (CRB), which affirmed. In 2017, we vacated and remanded the CRB's order. *Straughn*, 176 A.3d at 128-29. We concluded that the ALJ reasonably relied on Dr. Johnson's findings and reasonably discounted the treating physician's medical opinion. *Id.* at 128. We held, however, that the ALJ had erred by failing to address Ms. Straughn's testimony that she had not suffered right-knee pain before the September 2014 injury, and we remanded the case for further proceedings. *Id.* at 128-29.

In January 2018, the ALJ issued an order on remand denying Ms. Straughn's claim. Ms. Straughn again sought review by the CRB, which affirmed.

**II.**

We review a decision of the CRB to determine whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (internal quotation marks omitted). "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, we cannot ignore the compensation order which is the subject of the CRB's review." *Placido v. District of Columbia Dep't of Emp't Servs.*, 92 A.3d 323, 326 (D.C. 2014) (internal quotation marks omitted). We review credibility determinations of an ALJ to see whether they are "supported by substantial evidence on consideration of the entire record." *Rocha–Guzmán v. District of Columbia Dep't of Emp't Servs.*, 170 A.3d 170, 177 (D.C. 2017).

Ms. Straughn first argues that the ALJ erred on remand by failing to adequately address and weigh Ms. Straughn's testimony. We disagree. "An ALJ's assessment of credibility should consider the testimony in light of its rationality, [its]

internal consistency, and the manner in which it hangs together with evidence of the record." *Rocha–Guzmán*, 170 A.3d at 177 (brackets and internal quotation marks omitted). That is what the ALJ did. The ALJ specifically addressed Ms. Straughn's testimony that she never had any problems with her right knee before September 2014. Specifically, the ALJ noted that Ms. Straughn's testimony on that point was contradicted by medical evidence in the record, including x-rays showing results consistent with prior trauma, such as an old MCL sprain; evidence of preexisting Pellegrini-Stieda disease; and evidence of preexisting arthritis and chondromalacia.

We are not persuaded by Ms. Straughn's challenges to the ALJ's credibility determination. It is true, as Ms. Straughn notes, that the ALJ did not specifically refer to Ms. Straughn's demeanor and appearance while testifying. Demeanor is potentially relevant to credibility. *E.g.*, *In re K.C.*, 200 A.3d 1216, 1234 (D.C. 2019). There is no requirement, however, that a factfinder always explicitly discuss demeanor, even if -- as is inferentially true in this case -- the factfinder does not view the witness's demeanor as significant in assessing the witness's credibility. Moreover, contrary to Ms. Straughn's contention, we do not understand the ALJ to have adopted Dr. Johnson's evaluation of Ms. Straughn's credibility. Rather, the ALJ considered Dr. Johnson's medical findings, as well as other medical evidence in the record that contradicted Ms. Straughn's testimony. After weighing the

contrary medical evidence, the ALJ reasonably concluded that Ms. Straughn's testimony was not sufficient to establish, by a preponderance of the evidence, that her requested medical benefits were causally related to the work incident.

Finally, Ms. Straughn argues that there was no basis for the ALJ to accept Dr. Johnson's medical opinions over those of Dr. Azer, because Dr. Johnson's medical evaluation was nonsensical. We agree with the CRB, however, that this argument is foreclosed because it was decided adversely to Ms. Straughn in our earlier decision. *Straughn*, 176 A.3d at 128.

For the foregoing reasons, we affirm the order of the CRB.

*So ordered.*